# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LINDA J. WHEELER,<br><br>Defendant. | No. C13-0070<br><br>ORDER REGARDING DEFICIENCY JUDGMENT |

On the 11th day of August, 2015, this matter came on for hearing on the Petition for Determination of Deficiency Judgment and Declaratory Relief (docket number 55) filed by Defendant Linda J. Wheeler on May 7, 2015. The United States was represented by Assistant United States Attorney Martin J. McLaughlin. Defendant Linda J. Wheeler appeared personally and was unrepresented by counsel.

## I. PROCEDURAL HISTORY

On July 12, 2013, the United States filed a complaint against Wheeler and others, seeking foreclosure on real property located in Urbana, Iowa.[1] The complaint asked that judgment enter *in rem* against the subject property, and that *in personam* judgment enter against Wheeler. On July 16, 2014, the Court granted the Government's motion for summary judgment, and directed the United States to submit an appropriate judgment to the Court for approval. A final judgment and decree of foreclosure was filed on July 17,

---

[1] Default judgments were entered against the other defendants, and their interests are not part of the issue now before the Court.

2014. Personal judgment was entered against Wheeler for the total sum of $211,608.60, plus statutory interest after judgment.[2]

On August 15, 2014, the Government filed a praecipe for writ of execution. On August 18, the Clerk of Court issued a writ of special execution, directing the United States Marshal to "execute upon and sell" the subject property. The docket reflects that a copy of the writ was mailed to Wheeler.

The Court ordered the property sold by the United States Marshal, with appropriate notice given as required by law. Specifically, the Court ordered that public notice of the time and place of the sale be published "in a regularly issued newspaper of general circulation within Benton County, Iowa," once a week for at least four weeks prior to the sale. A proof of publication shows that public notice was published in *The Vinton Eagle* on September 2, 9, 16, and 23, 2014.[3] The Marshal's return also establishes that a copy of the public notice was sent to Wheeler by first class mail on August 18, 2014.[4] The public notice was also posted in the lobby of the United States Courthouse in Cedar Rapids.[5] On October 7, 2014, the property was purchased by a third-party at a public auction held at the front door of the Benton County Courthouse. The successful purchaser bid $84,000.

On October 15, 2014, the United States filed a "Motion to Confirm the Report and Approve the United States Marshal's Sale." The motion stated that the United States

---

[2] The judgment included $157,584.87 principal, $1,905.05 subsidy, and $52,118.68 interest as of March 25, 2014; plus interest accruing thereafter at a fate of $24.5799 per day until judgment, plus $400.00 for court costs, $270.00 for abstracting expenses, and $181.16 service fees.

[3] *See* docket number 35 at 24-26.

[4] *Id.* at 9.

[5] *Id.* at 5.

Marshal had provided a Certificate of Purchase to the third-party in exchange for a cashier's check in the amount of $84,000. The motion asked that the certificate of purchase be "ratified," that the Marshal's report of sale be confirmed, that the sale be approved, and that a Deed of Conveyance be issued to the purchaser. A copy of the motion was mailed to Wheeler. The Court granted the motion on the same day. Wheeler did not file any resistance to the motion or respond to the Court's order. A Marshal's Deed was issued to the purchaser and the net proceeds ($83,885.93) were paid to the United States Department of Justice for application on the judgment.

On March 16, 2015, the United States filed three applications for writ of continuing garnishment. The United States sought to garnish two bank accounts held by Wheeler, and to garnish Wheeler's wages. The applications state that a judgment was entered against Wheeler on about July 17, 2014 "in the amount of $189,585.08, plus costs and post-judgment interest at the rate of .11% compounded annually."[6] The fact is, judgment was entered against Wheeler on July 17, 2014 in the amount of $211,608.60, *not* $189,585.08.[7] After the net proceeds from the sale of the property ($83,885.93) are credited toward the judgment, the balance owed by Wheeler is approximately $127,722.67. Post-judgment interest continues to accrue at the modest rate of .11% annually.

## II. DISCUSSION

Wheeler argues that the subject property was sold at the Marshal's sale for far less than its true fair market value and, therefore, she is not responsible for the balance owed on the judgment. Specifically, Wheeler asks that "the Court make the final determination as the deficiency judgment, reflecting the fair market value of the home at the time of the

---

[6] *See* docket numbers 43, 44, and 45.

[7] At the hearing, counsel for the Government candidly admitted that he had "no idea" how the judgment amount referenced in the applications for continuing garnishment was derived.

3

Marshall [sic] sale and in the absence of evidence by Plaintiff of the fair market value or commercially reasonable manner for which they sold the property at Marshall [sic] sale, that the court deem the fair market value of the property equal to the remaining balance of the in personam judgment sought by Plaintiff and satisfy said judgment in full and for further relief as the Court deem equitable."[8] The United States asserts that Wheeler's challenge to the validity of the Marshal's sale is untimely. The United States also argues that the property was sold in compliance with the Court's order and in the manner provided by law, and Defendant's petition should be denied.

### A. Is Wheeler's Challenge to the Marshal's Sale Timely?

Wheeler claims the subject property was not sold in a commercially reasonable manner, and the successful bid at the auction was far less than the property's fair market value. The United States first argues that the claims now being asserted by Wheeler are untimely.

Final judgment in this case was entered on July 17, 2014. The Court ordered an *in personam* judgment enter against Wheeler in the amount of $211,608.60, plus statutory interest after judgment. The Court also ordered that a writ of special execution issue on the subject property, commanding the United States Marshal to sell the real property "at public sale in accordance with 28 U.S.C. §§ 2001-2003."

Any real property sold pursuant to a federal court order must be conducted at the courthouse of the county where the property is located. 28 U.S.C. § 2001(a). A public sale of real property shall not be made without notice published once a week for at least four weeks in at least one newspaper regularly issued in that county. 28 U.S.C. § 2002. The Final Judgment and Decree of Foreclosure, filed on July 17, 2014, directed the United States Marshal to give public notice of the time and place of sale by publication in a

---

[8] Defendant's Response (docket number 60) at 4.

regularly issued newspaper of general circulation within Benton County. As set forth above, the Marshal complied with the Court's order and the statutory mandate found in 28 U.S.C. § 2002.

Wheeler did not file an appeal to the final judgment entered on July 17, 2014, or otherwise challenge the Court's order regarding disposition of the property. Similarly, after receiving notice of the public sale, Wheeler did not take any action to challenge the manner in which the sale would be conducted, or the notice to be given. Moreover, when the Government filed a motion to confirm the sale, and the Court entered an order on the motion, Wheeler took no action. It was not until May 7, 2015, some 204 days after the Court entered an order confirming the Marshal's sale, that Wheeler filed the instant motion challenging the manner in which the sale was conducted.

In her "Petition for Determination of Deficiency Judgment," Wheeler does not cite any legal authority. Similarly, she did not cite any authority on this issue at the hearing. It would appear, however, that she is seeking relief from the order which confirmed the Marshal's sale. FEDERAL RULE OF CIVIL PROCEDURE 60(b) provides that the court may grant relief from a final judgment or order for the following reasons:

1. mistake, inadvertence, surprise, or excusable neglect;

2. newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RULE 59(b);

3. fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

4. the judgment is void;

5. the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

6. any other reason that justifies relief.

FED. R. CIV. P. 60(b). Wheeler did not address RULE 60(b) and it is unknown upon what reason she may rely. The Court finds that none of the reasons set forth in RULE 60(b) are applicable here. Wheeler was given notice of the Final Judgment and Decree of Foreclosure, she was advised of the United States Marshal's intent to sell the property at public sale, and she was notified regarding the results of the sale. Wheeler did not appeal or otherwise challenge any of these actions. I find no mistake, surprise, newly discovered evidence, fraud, or any other reason that would justify relief. Accordingly, to the extent the instant motion may be considered a motion for relief pursuant to RULE 60(b), it is denied. Wheeler cites no other authority which would allow her to challenge the Marshal's sale at this late date.

### B. Is Wheeler's Challenge Meritorious?

As set forth above, I do not believe RULE 60(b) affords Wheeler any relief, and I do not believe Wheeler's challenge to the Marshal's Sale is timely. Accordingly, it is not necessary for the Court to consider Wheeler's claim on its merits. The Court notes parenthetically, however, that Wheeler's claim is without merit.

Wheeler complains that the property was sold for less than its fair market value. Notwithstanding the Government's initial resistance to Wheeler's petition, that fact can hardly be disputed. Mary Beth Juergens, an officer with U.S.D.A. Rural Development, testified regarding the manner in which the property was sold. Using an estimated fair market value of $132,400, an employee of the Rural Housing Service of U.S.D.A. Rural Development prepared a "Net Recovery Value Worksheet." *See* Government's Exhibit 4. In determining the amount which Rural Development will bid at the auction, an attempt is made to estimate the "net recovery" to the Government if Rural Development obtains the property at the foreclosure sale. In estimating these expenses, the agency projects a two-year holding period before the property will be sold. According to Ms. Juergens, if

Rural Development acquires ownership of the property and then sells it on a later date, the debtor is credited with the net recovery to the Government after payment of the Government's costs.

In applying this method, Rural Development established a "net recovery value" for the property at $76,600. Laurie Buress of Rural Development sent a letter to the United States Marshal on September 25, 2014, asking that he "[p]lease enter a bid on behalf of the United States of America, Rural Development for $76,600.00." *See* Government's Exhibit 1. Deputy Richard Manning testified that he conducted the Marshal's Sale at the courthouse in Benton County on October 7, 2014. According to Manning, it is not unusual that there are no bidders and the government agency acquires ownership. In this case, however, there were multiple bidders. The successful bid was $84,000.

As noted above, the sale was conducted pursuant to the requirements of the United States Code and this Court's Order. Wheeler cites no authority for the proposition that real property sold pursuant to a federal court order must be in a "commercially reasonable manner." The manner in which real property sold pursuant to a federal court order is sold is set forth in 28 U.S.C. §§ 2001-2003.[9] It may be that if Rural Development had assumed possession of the property and marketed it in a conventional way, such as with a realtor, it would have brought a higher price. However, simply put, it was under no legal obligation to do so. Rather, it was required to sell the property in accordance with the United States Code and the Court's Order, which it did.

---

[9] While neither party cited any authority on the issue, the Court concludes the Uniform Commercial Code — requiring collateral to be disposed of in a commercially reasonable manner — has no application to the sale of real property pursuant to a federal court order.

## III. ORDER

IT IS THEREFORE ORDERED that Defendant's Petition for Determination of Deficiency Judgment (docket number 55) is **DENIED**.

DATED this 18th day of August, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA